IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

---

| | |
|---|---|
| GEORGE W. MATTHEWS,     ) | |
|                   ) | |
|      Petitioner,   ) | |
|                   ) | |
| v.                  ) | No. 1:17-cv-01199-STA-jay |
|                   ) | |
| MARTIN FRINK,          ) | |
|                   ) | |
|      Respondent.   ) | |

---

## ORDER DIRECTING CLERK TO MODIFY DOCKET,
## DENYING SECOND AMENDED § 2254 PETITION,
## DENYING PENDING MOTIONS AS MOOT,
## DENYING CERTIFICATE OF APPEALABILITY,
## AND
## DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

---

Petitioner George W. Matthews has filed a *pro se* second amended habeas corpus petition (the "Second Amended Petition") pursuant to 28 U.S.C. § 2254. (ECF No. 25.) He also has submitted a motion for an expedited ruling on the Second Amended Petition (ECF No. 52) and a motion for a writ of mandamus (ECF No. 53). For the following reasons, the Second Amended Petition and the motions are **DENIED**.

## BACKGROUND

In 2013, a Lake County, Tennessee, grand jury charged Matthews and co-defendant Rikki Rudd with one count of possession with intent to sell or distribute over one-half ounce of marijuana; one count of attempting to introduce contraband, specifically marijuana, into a penal facility; and one count of attempting to introduce contraband, specifically cellular telephones, into a penal facility. (ECF No. 30-1 at 15-16.)

At Matthews's jury trial, Lake County Deputy Thomas Hollowell testified that, "[j]ust after midnight in the early morning hours of February 17, 2013, [he] was patrolling Proctor City Road on the eastern boundary of the Northwest Correctional Center . . . in Lake County, Tennessee." *State v. Matthews*, No. W2015-02500-CCA-R3-CD, 2017 WL 347796, at \*1 (Tenn. Crim. App. Jan. 24, 2017), *perm. app. denied* (Tenn. April 13, 2017). Hollowell observed Matthews and Rudd "lying in a ditch alongside Proctor City Road." *Id.* The officer explained that the ditch leads to the prison firing range and greenhouse. *Id.* "According to Deputy Hollowell, this road and a nearby field are known avenues for smuggling contraband into the prison. Due to the contraband problem, Deputy Hollowell frequently patrolled the area." *Id.* After "exit[ing] his vehicle," the deputy "noticed two large duffel bags lying in the ditch approximately one to two feet from the defendant." *Id.* The officer detained Matthews and Rudd and "discovered [that the bags] contained forty-four individually packaged one-pound bags of tobacco; twenty-three cell phones with batteries and chargers; and . . . marijuana in thirteen individual packages." *Id.*

Hollowell further testified that he "did not see the defendant or his co-defendant carrying or handling the duffel bags." *Id.* He also indicated that "there were no fingerprints or other physical evidence on the bags or their contents" and "no receipts linking the defendants to the cell phones found inside the two duffel bags." *Id.*

A forensic scientist from the Tennessee Bureau of Investigation testified that the plant material contained in the packages found in the duffle bags was marijuana. *Id.* "The total weight of the packages was approximately 390 grams, or fourteen ounces." *Id.*

"Lieutenant David Ables, an investigator at the prison, testified" that "the Proctor City Road area, where the defendant was found, is a well-known drop site for smuggling illegal

2

contraband into the prison," as are "the prison greenhouse and firing range." *Id.* at *2. He further explained that "an area about 200 yards from where the defendant was found . . . is . . . accessible to inmates." *Id.* "Finally, Lieutenant Ables stated the defendant had been an inmate of the prison and was released approximately two weeks prior to this incident." *Id.* !

Lieutenant Joseph Vernon of the Lake County Sheriff's Office testified that "thirteen to fourteen ounces of marijuana, depending on the quality, would be worth at least between $1300 and $1400 on the street" and "would be worth at least $20,000 or more inside a prison." *Id.* He explained that "he knew of instances where inmates paid more than $500 dollars to have a cell phone smuggled into prison." *Id.*

The State rested its case and "the defense rested without presenting any proof." *Id.* The jury returned guilty verdicts on all three counts. *Id.* Matthews was sentenced to an effective sentenced of twelve years' incarceration. *Id.* He took an unsuccessful direct appeal, *id.* at *10, and the Tennessee Supreme Court denied discretionary review (ECF No. 30-16).

Petitioner then "filed a petition for writ of habeas corpus, challenging the sufficiency of two counts of the indictment charging him with attempting to introduce contraband into a penal facility." *Id.* at *2 (citing *Matthews v. State*, No. M2016-01011-CCA-R3-HC, 2017 WL 2472368, at *1 (Tenn. Crim. App. June 8, 2017), *perm. app. denied* (Tenn. Sept. 21, 2017)). The petition was denied. *See Matthews*, 2017 WL 2472368, at *2.

Matthews thereafter "filed a pro se petition for post-conviction relief, alleging, in pertinent part, that trial counsel was ineffective in failing to strike prison correctional officers from the jury." *Matthews v. State*, No. W2018-09966-CCA-R3-PC, 2019 WL 1110101, at *2 (Tenn. Crim. App. Mar. 11, 2019). "Following the appointment of counsel, the Petitioner filed an amended petition,

3

wherein he made the additional claim that trial counsel was ineffective in failing to advise him of a three-year settlement offer shortly before trial." *Id.* The post-conviction trial judge held an evidentiary hearing and denied relief from the bench and in a later-issued written order. (ECF No. 30-27 at 57-62; ECF No. 30-26 at 27-28.) !

## DISCUSSION

Matthews filed a pro se § 2254 petition on October 16, 2017, in the Middle District of Tennessee. (ECF No. 1.) The case was subsequently transferred to this district. (ECF No. 5.) By order dated October 27, 2017, the Court directed Petitioner to refile his claims on the Court's official § 2254 form. (ECF No. 7.) Matthews complied by filing an amended petition within the time prescribed. (ECF No. 8.) On December 11, 2017, Respondent, Martin Frink,[1] filed a motion to dismiss the pleading for Petitioner's failure to exhaust state remedies. (ECF No. 13.) Respondent represented that Petitioner's post-conviction proceedings were still pending in the state court. This Court denied the motion and held the case in abeyance pending the conclusion of the state case. (ECF No. 14.) )

On September 27, 2019, the Court found that the state post-conviction proceedings had terminated, and it directed the Clerk to reopen the case. (ECF No. 23.) By that same order, Petitioner was given time to amend his pleading. He filed the Second Amended Petition on October 15, 2019. In that pleading, Petitioner asserts that the indictment was defective as to Counts 2 and 3 (Claim 1) (ECF No. 25 at 5); the trial court erred by constructively amending the indictment

---

[1] The Clerk is **DIRECTED** to modify the docket to reflect Martin Frink as Respondent. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004); Fed. R. Civ. P. 25(d).

(Claim 2) (*id.*); Petitioner was prejudiced because a prison officer was a member of the jury (Claim 3) (*id.* at 10); the trial court erred by admitting evidence of Petitioner's prior criminal history (Claim 4) (*id.* at 5); the verdicts were inconsistent (Claim 5) (*id.*); and trial counsel was ineffective by failing to object to the admission of evidence of Petitioner's prior incarceration (Claim 6) (*id.* at 6), failing to convey to Petitioner the State's plea offer of concurrent sentences (Claim 7) (*id.* at 5, 8), and failing to convey the State's three-year plea offer (Claim 8) (*id.*).[2]

After two extensions of time, Respondent filed the state court record and a responsive pleading (the "Answer")  (ECF No. 30 & 31.)  Respondent argues that the claims are, variously, inadequately pleaded, non-cognizable, procedurally defaulted, and without merit.

Petitioner thereafter filed six motions for extensions of time to respond to the Answer (ECF No. 32, 34, 36, 38, 40, 42), which the Court granted (ECF No. 33, 35, 37, 39, 41, 43).  On September 22, 2020, Matthews filed his Reply.[3]  (ECF No. 44.)  He submitted his motion for expedited ruling on December 14, 2021, and his motion for a writ of mandamus on April 11, 2022.

## I.  Legal Standards

### A.  Federal Habeas Review

---

[2]  The Court has renumbered the claims for ease of discussion.

[3]  In the Reply, Petitioner posits, among other things, that counsel was ineffective for "[f]ail[ing] to object under *Remmer* [v. *United States*, 347 U.S. 227 (1954)], when the trail [sic] court refused to individually voir dire selected jurors about the influential impact of knowing or recognizing states [sic] witness."  (ECF No. 44 at 5.)  Matthews did not raise the claim in the state courts and he presented it for the first time in the instant case in his Reply.  Petitioner has forfeited the claim.  *See United States v. Pineda-Parada*, No. 5:13-cv-07309-JMH-HAI, 2014 WL 7405700, at *4 (E.D. Ky. Dec. 30, 2014) (petitioner's arguments were waived because they were first asserted in his reply) (citing *Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010)).

The statutory authority for federal courts to issue habeas corpus relief for persons in state custody is provided by § 2254, as amended by the Antiterrorism and Effective Death Penalty Act (the "AEDPA"). *See* 28 U.S.C. § 2254. Under § 2254, habeas relief is available only if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The availability of federal habeas relief is further restricted where the petitioner's claim was "adjudicated on the merits" in the state courts. 28 U.S.C. § 2254(d). In that circumstance, the federal court may not grant relief unless the state-court decision "'was contrary to' federal law then clearly established in the holdings of [the Supreme] Court; or . . . 'involved an unreasonable application of' such law; or . . . 'was based on an unreasonable determination of the facts' in light of the record before the state court." *Harrington v. Richter*, 562 U.S. 86, 100 (2011) (quoting 28 U.S.C. § 2254(d)(1)-(2)) (citations omitted)).

A state court's decision is contrary to federal law when it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or when "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at" an "opposite" result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). An unreasonable application of federal law occurs when the state court, having invoked the correct governing legal principle, "unreasonably applies the . . . [principle] to the facts of a prisoner's case." *Id.* at 409.

For purposes of § 2254(d)(2), a state court's "factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The Sixth Circuit construes § 2254(d)(2) in tandem with § 2254(e)(1) to require a presumption that the state court's factual determination is

6

correct in the absence of clear and convincing evidence to the contrary. *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).  A state court's factual findings are therefore "only unreasonable where they are 'rebutted by clear and convincing evidence and do not have support in the record.'"  *Moritz v. Woods*, 692 F. App'x 249, 254 (6th Cir. 2017) (*quoting Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (internal quotation marks omitted).

Before a federal court will review the merits of a claim brought under § 2254, the petitioner must have "exhausted the remedies available in the courts of the State."   28 U.S.C. § 2254(b)(1)(A).   To be properly exhausted, a claim must be "fairly presented" through "one complete round of the State's established appellate review process."   *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).

The exhaustion requirement works in tandem with the procedural-default rule, which generally bars federal habeas review of claims that were procedurally defaulted in the state courts. *Id.* at 848.  A petitioner procedurally defaults his claim where he fails to properly exhaust available remedies (that is, fails to fairly present the claim through one complete round of the state's appellate review process), and he can no longer exhaust because a state procedural rule or set of rules have closed-off any "remaining state court avenue" for review of the claim on the merits.  *Harris v. Booker*, 251 F. App'x 319, 322 (6th Cir. 2007).  Procedural default also occurs where the state court "actually . . . relied on [a state] procedural bar as an independent basis for its disposition of the case."  *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985).  To cause a procedural default, the state court's ruling must "rest[] on a state law ground that is independent of the federal question

and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (citing *Fox Film Corp. v. Muller*, 296 U.S. 207, 210 (1935); *Klinger v. Missouri*, 80 U.S. 257, 263 (1871)).

A petitioner will be entitled to federal court review of the merits of a claim that was procedurally defaulted is he demonstrates "cause for the default and actual prejudice as a result of the alleged violation of federal law[.]" *Id.* at 750. The ineffectiveness of post-conviction trial counsel may be cause to excuse the default of an ineffective-assistance-of-trial-counsel claim. *Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (citing *Martinez v. Ryan*, 566 U.S. 1, 14, 16-17 (2012)).

A petitioner may also overcome his procedural defaults by establishing a "gateway" claim of actual innocence. *Schlup v. Delo*, 513 U.S. 298, 315 (1995). To open the gateway, a prisoner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324. He must also show that, in light of the new evidence, "it is more likely than not that no reasonable juror would have convicted him." *Id.* at 327.

### B. Ineffective Assistance of Counsel

A claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984). *Pollini v. Robey*, 981 F.3d 486, 493 (6th Cir. 2020), *cert. denied*, No. 20-7918, 2021 WL 2519379 (U.S. June 21, 2021). To succeed on such a claim, a petitioner must demonstrate two elements: (1) "that counsel's performance was deficient"; and (2) "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so

8

undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A court considering a claim of ineffective assistance must apply "a strong presumption" that the attorney's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted).

An attorney's "strategic choices" are "virtually unchallengeable" if based on a "thorough investigation of law and facts relevant to plausible options . . . ." *Id.* at 690-91. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.*

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693) (citations omitted). Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

The deference to be accorded a state-court decision under 28 U.S.C. § 2254(d) is magnified when a federal court reviews an ineffective assistance claim:

9

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 105.

## II.   Claim 1

Petitioner asserts that the indictment was defective as to the charges for attempt to introduce contraband into a penal institution. He posits, specifically, that although Counts 2 and 3 cited to the statute criminalizing the introduction of contraband into a penal institution, they did not refer to the Tennessee statute defining criminal attempt. The counts read as follows:

> COUNT TWO
> The GRAND JURORS of LAKE COUNTY, TENNESSEE, duly empaneled and sworn upon their oath, present that GEORGE WASHINGTON MATTHEWS ... on or about February 17, 2013, in LAKE County, Tennessee, and before the finding of this indictment, unlawfully and knowingly, with unlawful intent, did attempt to take a controlled substance, to-wit: Marijuana, a Schedule VI drug, into the Northwest Correctional Complex where prisoners are quartered in violation of TCA § 39–16–201. This is a Class D Felony and is against the peace and dignity of the State of Tennessee.

> COUNT THREE
> THE GRAND JURORS of LAKE COUNTY, TENNESSEE, duly empaneled and sworn upon their oath, present that GEORGE WASHINGTON MATTHEWS ... on or about February 17, 2013, in LAKE County, Tennessee, and before the finding of this indictment, unlawfully and knowingly, with unlawful intent, did attempt to take contraband, to-wit: cell phones, into the Northwest Correctional Complex where prisoners are quartered, in violation of TCA § 39–16–201. This is a Class A Misdemeanor and is against the peace and dignity of the State of Tennessee.

*Matthews*, 2017 WL 347796, at *9.

Petitioner presented the claim on direct appeal, but the TCCA found that no relief was warranted. *Id.* Respondent argues that the appellate court's decision easily meets the AEDPA's deferential standards. The Court agrees.

10

In rejecting the claim, the appellate court determined that, [w]hile Count Two and Count Three do not reference the attempt statute, the indictment satisfies the requirements of the United States Constitution, the Tennessee Constitution, and Tennessee Code Annotated section 40–13–202." *Id.* The court reasoned that the indictment put Matthews "on notice that he was charged with the knowing attempt to introduce illegal contraband into Northwest Correctional Complex," provide notice to the trial court "that a judgment and sentence for attempted introduction of contraband into a penal facility would be proper upon conviction," and protected the defendant "from double jeopardy by expressly stating the date and location of the offenses with particularity." *Id.*

The TCCA's decision is not contrary to clearly established Supreme Court law. More to the point, the state court identified and applied a "fair notice" test to Counts 2 and 3 of the indictment. In *Cole v. Arkansas,* 333 U.S. 196 (1948), the Supreme Court recognized that "[n]o principle of procedural due process is more clearly established than that notice of the specific charge, and chance to be heard in trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state, or federal[.]" *Cole,* 333 U.S. at 201. The due process guarantee "mandates that whatever charging method the state employs must give the criminal defendant fair notice of the charges against him to permit adequate preparation of his defense." *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984) (citing *In Re Ruffalo,* 390 U.S. 544 (1968); *Blake v. Morford,* 563 F.2d 248 (6th Cir. 1977); *Watson v. Jago,* 558 F.2d 330, 338 (6th Cir. 1977)). The TCCA's "run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of [Matthews's] case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." *Williams*, 529 U.S. at 406.

11

The opinion is also not based on unreasonable factual determinations or an unreasonable application of the governing law to the facts. Petitioner does not dispute the court's factual finding as to the actual text of Counts 2 and 3. A plain reading of that text amply supports the state appeals court's conclusion that Petitioner was put "on notice that he was charged with the knowing attempt to introduce illegal contraband into Northwest Correctional Complex." *Matthews*, 2017 WL 347796, at *9. The offense was, in short, described with sufficient precision and certainty.

In sum, the TCCA's decision rejecting Claim 1 is not contrary to clearly established Supreme Court law, based on unreasonable factual determinations, or the result of an unreasonable application of the law to the facts. The claim is therefore without merit and is **DENIED**.

## III.   Claim 2

Petitioner insists that the trial court erred by "constructively amend[ing] the indictment on page 272 and 273 of the trial transcript." (ECF No. 25 at 5.) Those pages contain the trial court's instructions to the jury on the elements of the crime of introduction of contraband into a penal institution. (ECF No. 30-5 at 126-27.) Respondent argues that the claim should be dismissed as inadequately pleaded and procedurally defaulted. The Court finds that the first of those assertions is without merit, but the second is dispositive of the claim.

Rule 2(c) of the *Rules Governing Section 2254 Cases in the United States District Courts* provides that the Petitioner must state the nature of his claims and present supporting facts. "Dismissal under Habeas Rule 2(c) is appropriate in cases where it is impossible to determine from the petitioner's pleadings the exact errors of fact or law raised for adjudication." *Malone v. Lee*, No. 2:17-cv-02913-MSN-tmp, ECF No. 31 at 27 n.7 (W.D. Tenn. May 4, 2020) (citing *Rice v. Warden*, No. 1: 14-cv-732, 2015 WL 5299421, at *4 (S.D. Ohio Sept. 9, 2015) (dismissal under

12

Rule 2(c) appropriate where pleadings contain unintelligible and conclusory allegations and statements) (citations omitted)); *Acord v. Warden, Lebanon Corr. Inst.*, No. 2:12-CV-355, 2013 WL 228027, at \*1 (S.D. Ohio Jan. 22, 2013), *report and recommendation adopted sub nom. Acord v. Warden, Ross Corr. Inst.*, No. 2:12-CV-355, 2013 WL 1324323 (S.D. Ohio Mar. 28, 2013) (a habeas court is not required to "conjure allegations" on petitioner's behalf).

Respondent's argument that the claim is not well-pleaded is belied by the fact that, as Respondent has acknowledged, Petitioner raised the issue in his brief on appeal from the summary dismissal of his state habeas corpus petition. Citing to pages 272 and 273 of the trial transcript, Matthews's brief clearly asserted that the trial judge had constructively amended the indictment's introduction-of-contraband charges by "instruct[ing] the jury on an additional liability 'or under custodial supervision' . . . but the appellant was not charged in the indictment with that liability." (ECF No. 30-18 at 11 (bolding omitted).) Liberally construed, Claim 2, as set forth in the Petition, has been adequately pleaded.

Nevertheless, the claim is procedurally defaulted. In Petitioner's state habeas appeal, the TCCA found that Matthews "did not present this issue to the trial court in his habeas corpus petition." *Matthews*, 2017 WL 2472368, at \*2. The court therefore held that the claim was waived as having been "raised for the first time on appeal[.]" *Id.* (quoting *State v. Alvarado*, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996.). Tennessee's waiver rule is an independent and adequate state procedural ground that will bar federal habeas review. *See Jones v. State*, No. M2019-01935-CCA-R3-HC, 2020 WL 4208425, at \*2 n. 1 (Tenn. Crim. App. July 22, 2020) ("Because [petitioner's] argument was not presented to the habeas corpus court, it is waived."); *Collier v. Lindamood*, No. M2010-01167-CCA-R3-HC, 2010 WL 4970906, at \*3 (Tenn. Crim. App. Nov.

29, 2010) (state habeas corpus petitioner's claim was "waived because it [was] raised for the first time on appeal"); *Phillips v. Johnson*, No. 3:15-CV-1039, 2017 WL 4278519, at *13 (M.D. Tenn. Sept. 27, 2017), *report and recommendation adopted*, No. 3:15-CV-01039, 2017 WL 5900114 (M.D. Tenn. Nov. 30, 2017) (Tennessee prisoner's § 2254 claim was procedurally defaulted where he waived the issue in state court by raising it for the first time in his state habeas corpus appeal); *see also generally Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Matthews concedes that he procedurally defaulted Claim 2, but he insists that the cause for the default was appellate counsel's failure to raise the claim on direct appeal.  (ECF No. 25 at 5.) As Respondent correctly points out, however, "appellate counsel's failure to raise this claim in the direct appeal did not cause the default."  (ECF No. 31 at 20.)  Rather, it was Petitioner's failure to present the issue to the state habeas trial court that resulted in the waiver.  But even assuming that direct-appeal counsel's conduct caused the default, Petitioner did not pursue in the state courts a claim that appellate counsel was ineffective in that regard, and he has not asserted cause for his failure to do so.  *See Murray v. Carrier*, 477 U.S. 478, 488-89 (1986) ("[T]he exhaustion doctrine . . . generally requires that a claim of ineffective assistance [must] be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default."); *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) (emphasis in original) (where an independent claim "itself [has been] procedurally defaulted," the petitioner must "satisfy the cause-and-prejudice standard with respect to *that* claim.").  The procedural default of Claim 2 is therefore unexcused.  The claim is **DISMISSED**.

## IV.   Claim 3

Petitioner maintains that he was "prejudiced by [a] prison officer on the jury." (ECF No. 25 at 5.) Specifically, he challenges the seating of Natasha Miller on the jury because she was a correctional officer at the Northwest Correctional Complex during the time he was an inmate at that facility. Respondent contends that the claim is procedurally defaulted. In his Reply, Petitioner concedes that he procedurally defaulted the claim, but he argues that his "post-conviction counsel's ineffectiveness in not preserving and protecting the substance of this constitutional claim in the post-conviction hearing is cause necessary to excuse any procedural bar argument." (ECF No. 44 at 9.)

The argument is misplaced. As discussed above, *Martinez* holds that post-conviction counsel's ineffective assistance in failing to raise an ineffective-assistance-of-trial-counsel claim may excuse the default of such a claim. *See Martinez*, 566 U.S. at 14. Post-conviction counsel's ineffective assistance cannot, however, excuse the default of a trial-error claim. *See Abdur'Rahman v. Carpenter*, 805 F.3d 710, 716 (6th Cir. 2015). Claim 3 alleges an error at trial. Therefore, the procedural default of the claim is not excused by post-conviction counsel's alleged ineffective assistance in failing to present the issue during the post-conviction proceedings.

If Petitioner means to assert that counsel rendered ineffective assistance by failing to exercise a preemptive strike against the juror, that claim was exhausted in the state courts. *See Matthews*, 2019 WL 1110101, at *1, 7-8. Respondent argues, however, that the TCCA's decision rejecting the claim passes muster under the AEDPA. The Court agrees.

In assessing the claim, the TCCA identified *Strickland*'s standards and those relating to juror-bias claims as governing its analysis. Regarding the latter, the court recognized that "[b]oth the state and federal constitution[s] guarantee an accused the right to trial by an impartial jury."

15

*Id.* at *7 (citing U.S. Const. amend. VI; Tenn. Const. art. I, § 9).  It noted that "the burden is on the defendant to show that a juror is in some way biased or prejudiced." *Id.* (citing *State v. Caughron*, 855 S.W.2d 526, 539 (Tenn. 1993)).  Relying on the Sixth Circuit case of *Holder v. Palmer*, 588 F.3d 328, 339 (6th Cir. 2009), the court further determined that a petitioner alleging the ineffective assistance of counsel premised on "counsel's failure to strike the allegedly biased jurors . . . must show that the jurors were actually biased against him." *Id.* (quoting *Holder*, 588 F.3d at 339).

Examining the record in Matthews's criminal case, the TCCA found that "[d]uring voir dire,

> the counsel for both parties and the trial court recognized that the prison was a "very large employer" in the area. The court stated that while individuals who were merely employed at the prison would not be automatically excused for cause, the court would "voir dire" them. Juror Miller, in response to questions from the trial court, stated that she was employed at the prison and that she did not know anything about the Petitioner's case. Later, Juror Miller said that she worked as a correctional officer for the prison and that she did not know the Petitioner. At different points during voir dire, the court and trial counsel asked the venire if they could decide the issue of guilt or innocence based solely upon the evidence, and the venire always responded affirmatively.

*Id.*

Turning to the post-conviction record, the appellate court noted that Petitioner testified "that Juror Miller was biased against him because she knew him from his time in prison and often came to his prison pod to 'rant and rave' about tobacco and marijuana," but he did not call Miller as a witness at the hearing.  *Id.*  And although Matthews testified that "he asked trial counsel to use a peremptory strike to remove Juror Miller [but] trial counsel refused," trial counsel  "did not recall Petitioner asking him to remove Juror Miller." *Id.* at *7, 8.  Counsel further testified "that

16

he intentionally kept Juror Miller because she did not seem to know the Petitioner and because he believed she would be interested in the Petitioner's case and would carefully listen to the facts." *Id.* at \*8.  Counsel "asserted that Juror Miller's job did not necessarily bias her against the Petitioner because her employment at the prison did not 'necessarily mean that [she was] always on the prison's side.'" *Id.*  He explained "that he had already struck Ms. Horton, an African American, because he had sued her and did not want to 'los[e] even more diversity' by striking Juror Miller, who was also African American."[4]  *Id.*  He was also aware that the State "had not used any of its sixteen peremptory challenges at that point during jury selection [and] was concerned that if the Petitioner and his codefendant 'ran out of strikes,' the State would have 'the ability just to completely remake the jury.'"  *Id.*  Counsel also testified that "there were several individuals behind Juror Miller that he did not want to sit on the Petitioner's jury and that neither he nor codefendant's counsel chose to remove Juror Miller from the jury even though they had peremptory challenges remaining."  *Id.*  !

!        Refusing to disturb the lower court's decision to "accredit[] trial counsel's testimony at the post-conviction hearing," the TCCA determined that "counsel made a strategic decision not to remove Juror Miller."  *Id.*  Counsel "believed Juror Miller would listen carefully to the facts, and he was justifiably concerned that the State would use all of its peremptory challenges to remake the jury."  *Id.*  The appellate court also found that "Petitioner failed to present Juror Miller at the post-conviction hearing and failed to present any evidence, other than his bald assertions, to show that she was actually biased against him."  *Id.*  The court therefore "[c]onclude[d] that the Petitioner

---

[4] Petitioner is African American.  *Matthews*, 2019 WL 1110101, at \*2.

. . . failed to show that trial counsel's decision not to remove Juror Miller was deficient or prejudicial." *Id.*

The state court's decision is not contrary to clearly established Supreme Court law. The Sixth Amendment "right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961); *see also Smith v. Phillips,* 455 U.S. 209, 217 (1982) ("Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen."). A juror is impartial if she can "render a verdict based on the evidence presented in court." *Irvin*, 366 U.S. at 723. Although citing to Tennessee and Sixth Circuit cases, the TCCA correctly articulated these standards. The court also identified *Strickland*'s precepts as governing its analysis.

The court's decision is also not based on unreasonable factual determinations or an unreasonable application of governing standards to those facts. The post-conviction trial court credited counsel's explanation for his decision not to exercise a preemptory strike as to Miller and the TCCA refused to disrupt that credibility determination.[5] Based on counsel's credited testimony, it is patently clear that he made a strategic decision, which is presumed to fall within the wide range of reasonable professional conduct. *See Strickland*, 466 U.S. at 689 (a petitioner "must overcome the presumption that, under the circumstances, the challenged action might be

---

[5] Credibility determinations are findings of fact. *See McMullan v. Booker*, 761 F.3d 662, 671 (6th Cir. 2014) ("fact-based determination[s] subject to scrutiny under § 2254(d)(2)" include "facts in the sense of a recital of external events and the credibility of their narrators") (quoting *Thompson v. Keohane,* 516 U.S. 99, 110 (1995)).

considered sound trial strategy") (internal quotation marks omitted).  Petitioner did not present credible evidence to overcome the presumption.  Additionally, there is no evidence that Miller was not impartial.  As the TCCA noted, Petitioner put forth no evidence of bias other than his bald allegations, and Miller indicated during jury selection that she could decide the case impartially. In light of these facts, the court reasonably concluded that counsel did not perform deficiently when he chose not to use a peremptory strike against Miller and that counsel's conduct did not prejudice Petitioner.  For the above-stated reasons, Claim 3, as a stand-alone trial-error claim, is procedurally defaulted.  To the extent the claim challenges counsel's effectiveness, it is without merit because the TCCA's decision rejecting the claim is unassailable under the AEDPA's deferential standards.  Claim 3 is therefore **DISMISSED**.

## V.   Claim 4

Petitioner posits that the trial court erred by admitting evidence of his prior incarceration at the Northwest Correctional Complex.  Specifically, he contends that the trial court should not have allowed Lt. Ables to testify that Petitioner had been released from that prison two weeks prior to his arrest.  Respondent argues that the claim is a non-cognizable state law claim, procedurally defaulted if construed as a federal claim, and without merit.  Petitioner did not address Respondent's arguments in his Reply.

On direct appeal, Petitioner argued that the trial court erred in allowing Lt. Ables to testify "regarding [his] release from the prison merely fifteen days prior to" the events at issue in his case. *Matthews*, 2017 WL 347796, at *8.  Applying state evidentiary rules, the TCCA rejected the claim and upheld the lower court's admission of the witness's testimony.  *Id.*

To the extent Petitioner is now asserting that the TCCA's decision is unreasonable, the claim cannot be brought in this § 2254 proceeding. It is well-established that federal habeas corpus relief is not available "for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). The state appellate court's decision rejecting Claim 4 was grounded only on Tennessee evidentiary rules and state cases interpreting those rules. The claim is there non-cognizable.

Insofar as Petitioner may mean to assert that Claim 4 invokes a federal constitutional provision, such as the due process clause,[6] the claim is procedurally defaulted. As indicated above, a habeas petitioner must "fairly present[]" his federal claim to the state courts. *Boerckel*, 526 U.S. at 848. "To 'fairly present' a federal claim, the petitioner must plead both a factual and legal basis for the claim." *Katt v. Lafler*, 271 F. App'x 479, 481–82 (6th Cir. 2008) (quoting *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000)). In assessing whether a petitioner has done so, a court must scrutinize the petitioner's state court filings for

> (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.

*McMeans*, 228 F.3d at 681.

Petitioner's direct appeal brief did not present a federal constitutional claim regarding the admission of the prior-incarceration evidence. Although the brief referenced "due process" in the

---

[6] "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff,* 518 U.S. 37, 43 (1996)).

title of the argument section, the body of the argument relied exclusively on state law. Specifically, the presentation was premised only on Tennessee Rule of Evidence 404(b) and the case of *State v. Rickman*, 876 S.W.2d 824 (Tenn. 1994). (ECF No. 30-10 at 20-22.) The brief referred to *Rickman* for the proposition that "[t]he general rule excluding evidence of other crimes is based on the recognition that such evidence easily results in a jury improperly convicting a defendant for his or her bad character or apparent propensity or disposition to commit a crime." (*Id.* at 22 (quoting *Rickman*, 876 S.W.2d at 828).) The gist of Petitioner's argument was that the trial "court erred in determining that the probative value of the defendant's recent incarceration at the Northwest Correctional Complex was outweighed by its unfair prejudicial effect." (*Id.*) No argument based upon the Due Process Clause of the United States Constitution was presented. A claim based on federal law was therefore not fairly presented to the TCCA. *See Katt*, 271 F. App'x 479, 482 (6th Cir. 2008) (petitioner's "isolated allusion to 'constitutional rights to due process and a fair trial,'" while relying only on state evidentiary law in the body of his argument, "fail[ed] to afford the [state] courts adequate notice that [he] intended to invoke the Due Process Clause").

As a federal law claim, Claim 4 is therefore procedurally defaulted for Petitioner's failure to fairly present it to the TCCA. Petitioner has not asserted cause and prejudice to excuse the procedural default. The claim is **DISMISSED**.[7]

## VI.  Claim 5

In Claim 5, Petitioner simply asserts "inconsistent verdicts." (ECF No. 25 at 5.) Respondent argues that the claim should be dismissed because it is not well-pleaded, non-cognizable, and procedurally defaulted. Matthews did not address those arguments in his Reply.

---

[7] The Court declines Respondent's invitation to rule on the merits of the claim.

Claim 5 fails to meet the minimum pleading standards of Rule 2(c). The assertion of "inconsistent verdicts" is not accompanied by supporting facts and is thus conclusory. *Wogenstahl v. Mitchell*, 668 F.3d 307, 343 (6th Cir. 2012). ("Merely conclusory allegations . . . are insufficient to state a constitutional claim."). Accordingly, the claim is subject to dismissal as inadequately pleaded.

In addition to failing to satisfy the habeas pleading standards, Petitioner also does not state a cognizable claim. More to the point, it is clear under federal law that inconsistent verdicts are permitted. *See Dowling v. United States*, 493 U.S. 342, 353–54 (1990) (citing *Standefer v. United States,* 447 U.S. 10, 25 (1980)) ("[I]nconsistent verdicts are constitutionally tolerable."). The claim therefore does not plead a ground for federal habeas relief.

Finally, the claim is barred from review for the additional reason that it is procedurally defaulted. Petitioner did not raise an inconsistent-verdicts claim in his direct appeal, and the time for presenting it to the state courts has passed. He also has not offered reasons why the default should be excused. Claim 5 is therefore **DISMISSED**.

## VII.   Claim 6

Petitioner claims that trial counsel was ineffective by failing to object to the admission of Lt. Ables's testimony that Petitioner was previously a prisoner at the Northwest Correctional Complex. Respondent acknowledges that Matthews exhausted the issue by presenting it on appeal from the denial of post-conviction relief, but he maintains that the claim is without merit. Petitioner insists in the Reply that he is entitled to relief.

As indicated *supra*, the trial court allowed Ables to testify about Petitioner's previous incarceration at the prison. Counsel initially had been successful in moving "to preclude any

22

reference to the Petitioner's prior incarceration[.]" *Matthews*, 2019 WL 1110101, at *9. However, the trial "court later reconsidered [its] ruling and allowed the State to introduce proof of the Petitioner's prior incarceration at the prison just two weeks prior to his arrest." *Id.* Counsel did not object to the court's second ruling. Id.

At the post-conviction hearing, "counsel explained that the reason he did not object to Officer Ables' testimony about the Petitioner's recent incarceration was because the trial court had already ruled that this evidence was admissible." *Id.* He acknowledged that his decision not to object to preserve the record was "a mistake." (ECF No. 30-27 at 51.)

Counsel represented Petitioner on direct appeal and raised the issue before the TCCA in that proceeding. *Matthews*, 2017 WL 347796, at *6-8. The appellate court did not conclude that Petitioner had waived the issue by failing to lodge an objection to Ables's testimony in the court below, but instead reviewed the trial court's decision for an abuse of discretion. *Id.* at *8. The TCCA upheld the lower court's ruling. *Id.* The court also held that, even if the trial court erred in admitting the testimony, the error was harmless in light of the overwhelming evidence of Petitioner's guilt. *Id.*

On post-conviction appeal, the TCCA concluded that counsel had not rendered ineffective assistance by failing to object to Ables's testimony. *Matthews*, 2019 WL 1110101, at *8-9. The court credited counsel's testimony "that the reason he did not object to Officer Ables' testimony about the Petitioner's recent incarceration was because the trial court had already ruled that this evidence was admissible." *Matthews*, 2019 WL 1110101, at *9.

The TCCA's decision rejecting the ineffective assistance claim was not contrary to clearly established Supreme Court law or based on unreasonable factual determinations. As noted, the

23

appellate court identified and applied *Strickland*'s standards to the record before it. What is more, Petitioner has not identified any clear and convincing evidence to undermine the court's findings of fact.

That leaves the question of whether the TCCA unreasonably concluded that counsel was not ineffective. It is true that the court's reasoning supporting that conclusion was somewhat summary in nature. Nevertheless, this Court will not disturb the state court's decision unless Petitioner demonstrates that "there was no reasonable basis for the state court to deny relief." *Harrington,* 562 U.S. at 98. He cannot meet that burden.

As discussed above, counsel challenged on direct appeal the admission of Ables's testimony. The appellate court did not consider the issue waived, addressed the merits of the argument, and affirmed the lower court's decision. Therefore, although counsel himself labeled his failure to object at trial "a mistake," his conduct was without effect. As no prejudice resulted from counsel's conduct, the TCCA's rejection of the ineffective assistance claim was not unreasonable. Claim 6 is **DENIED**.

## VIII.   Claim 7

In Claim 7, Petitioner maintains that trial counsel provided ineffective assistance by failing to communicate to him a plea offer for concurrent sentences. Respondent argues that the claim is procedurally defaulted. Matthews did not address the claim in his Reply.

Respondent's position is well-taken. At the post-conviction hearing, "Petitioner claimed that trial counsel never informed him of any offer from the State involving a concurrent sentence." *Matthews,* 2019 WL 1110101, at *3. Counsel testified that there were several offers but "almost all of them were always going to be consecutive." (ECF No. 30-27 at 38.) Matthews did not raise

24

the issue to the TCCA on appeal from the denial of post-conviction relief. Instead, his appellate brief focused on counsel's alleged failure to convey a three-year offer. (*See* ECF No. 30-28 at 6-8, 13.) Because Petitioner has not provided any reason why the procedural default should be excused, the claim is barred from federal habeas review. Claim 7 is **DISMISSED**.

## IX. Claim 8

Petitioner asserts that counsel was ineffective for failing to communicate to him the State's final plea offer of three years. Respondent acknowledges that Matthews exhausted the claim in state courts but argues that the TCCA's decision rejecting the claim was reasonable under the AEDPA's standards. Petitioner maintains in the Reply that the claim is meritorious.

On appeal, the TCCA invoked *Strickland*'s standards, including as they apply in the context of plea offers. *Matthews*, 2019 WL 1110101, at *6, 9-10. Although relying, in part, on Tennessee cases, the court recited legal standards clearly established by the United States Supreme Court, to wit:

> [C]ounsel's failure to communicate a plea offer to a defendant renders counsel's representation deficient. Regarding whether such deficient representation results in prejudice, we recognize that [i]n the context of a petitioner who seeks to reinstate (rather than withdraw) a plea offer, the petitioner must show that there is a reasonable probability that he or she would have accepted the plea had it been properly communicated to him or her. Such a reasonable probability is defined as a probability sufficient to undermine confidence in the outcome of the proceedings.

*Id.* at *9 (citations and internal quotation marks omitted). *See Missouri v. Frye*, 566 U.S. 134, 145 (2012) (trial counsel performs deficiently by failing to convey a plea offer to his client) and *Lafler v. Cooper*, 566 U.S. 156, 164 (2012) (to establish prejudice, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer).

The TCCA recounted the evidence adduced at the post-conviction hearing. Petitioner in that proceeding testified "that following his conviction, he learned that the State had communicated an offer of three years to trial counsel." *Matthews*, 2019 WL 1110101, at *2. "He said that although he had been informed of an eight-year and a six-year offer, trial counsel never gave him the opportunity to accept an offer of three years." *Id.* Matthews explained that he asked counsel on the morning of the trial to discuss a plea deal below six years, but that "counsel refused, claiming the court would not allow it because it was 'too late.'" *Id.* He insisted "that had he been informed of a three-year offer, he would have accepted it." *Id.*

Trial counsel testified as to his practice regarding plea offers. He explained that, "whenever he receives an offer, he immediately notifies the client 'because it stops [him] from spending more time on a case that just suddenly gets settled.'" *Id.* at *4. He confirmed that he told Matthews about six- and eight-year offers, and also a final offer received "approximately two weeks prior to trial that was 'substantially less' than any of the earlier offers." *Id.* Counsel could not, however, remember specifically whether the final offer was for three years. (ECF No. 30-27 at 39.) Counsel recalled that Petitioner "refused [the last offer] and immediately began discussing his defense strategy at trial." *Matthews*, 2019 WL 1110101, at *10. Counsel explained that "Petitioner mistakenly believed that because there were no receipts, fingerprints, or DNA evidence linking him to the duffle bags of contraband, the State would be unable to convict him." *Id.* "[A]ny offer involving a consecutive sentence was a 'nonstarter' for the Petitioner and . . . each time [counsel] mentioned an offer with a consecutive sentence, the Petitioner would 'become agitated' and would basically say that [counsel] was 'not trying hard enough.'" *Id.* at *4.

Based on the record, the TCCA found that counsel had relayed the three-year plea offer to his client. *Id.* at *10. Counsel's credited testimony was that "whenever he receives an offer, he immediately notifies the client 'because it stops [him] from spending more time on a case that just suddenly gets settled.'" *Id.* The appellate court also "agree[d] with the post-conviction court's finding that the Petitioner was 'never interested in settling the case' because he mistakenly believed that he 'could beat the charge.'" *Id.* The court therefore held that "Petitioner . . . failed to establish that trial counsel was deficient in not informing him of the three-year offer" and did not carry his burden of demonstrating "that there [was] a reasonable probability he would have accepted the offer had it been properly communicated to him." *Id.*

The TCCA's decision is not contrary to clearly established Supreme Court law. The court correctly identified *Strickland*'s two-part test as governing its analysis. In addition, as noted above, the appellate court's view of how that test applies in the plea context is consistent with Supreme Court pronouncements.

The decision was also not based on unreasonable factual findings. The post-conviction trial court credited counsel's testimony regarding his recollections of the State's final offer, his practice of immediately informing his clients of any plea offers, Petitioner's persistent rejection of all offers, and Petitioner's belief that the State could not prove its case. The TCCA implicitly refused to disturb that credibility finding. This Court, sitting in federal habeas, will not disrupt the TCCA's own refusal to reject the lower court's credibility determinations. *See Rice v. Collins*, 546 U.S. 333, 334-35 (2006) ("Reasonable minds reviewing the record might disagree about [a witness's] credibility, but on habeas review that does not suffice to supersede the trial court's

credibility determination.").  Petitioner also has not identified clear and convincing evidence to undermine any other factual determination.

Finally, the TCCA's conclusion that counsel did not render ineffective assistance was not based on an unreasonable application of the precepts set forth in *Strickland*, *Frye*, and *Lafler*.   In light of a record demonstrating that counsel communicated the three-year offer to Petitioner and that Petitioner was not interested in settling, the court's conclusion that counsel did not perform deficiently and that Petitioner was not prejudiced were patently reasonable.  Claim 8 is **DENIED** as meritless.

For all of these reasons, the Second Amended Petition is **DENIED**.  The motion for expedited ruling and motion for writ of mandamus are **DENIED** as moot.  Judgment shall be entered for Respondent.


## APPEAL ISSUES

A § 2254 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).  A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2)-(3).  A substantial showing is made when the petitioner demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition

states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the Second Amended Petition.  Because any appeal by Petitioner does not deserve attention, the Court **DENIES** a certificate of appealability.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit.  Fed. R. App. P. 24(a).  However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court.  *Id.*

In this case, for the same reason it denies a COA, the Court **CERTIFIES**, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith.  Leave to appeal *in forma pauperis* is therefore **DENIED**.[8]

**IT IS SO ORDERED**.

> s/ S. Thomas Anderson
> S. THOMAS ANDERSON
> CHIEF UNITED STATES DISTRICT JUDGE
>
> Date: August 24, 2022.

---

[8] If Petitioner files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.